1

```
  1                    IN THE UNITED STATES DISTRICT COURT
                          EASTERN DISTRICT OF ARKANSAS
  2                             WESTERN DIVISION

  3

  4   UNITED STATES OF AMERICA,       .
                                      . Docket No. 4:17-CR-00144-KGB
  5   PLAINTIFF,                      .
                                      . Little Rock, Arkansas
  6   VS.                             . June 23, 2017
                                      . 2:45 P.M.
  7   ROBERT LIGHTFOOT,               .
                                      .
  8   DEFENDANT.                      .
       . . . . . . . . . . . . . . . .
  9

 10

 11

 12                          TRANSCRIPT OF

 13                      PLEA AND ARRAIGNMENT

 14            BEFORE THE HONORABLE J. THOMAS RAY

 15             UNITED STATES MAGISTRATE JUDGE

 16

 17

 18

 19   ELECTRONIC COURT RECORDER-OPERATOR:  Ms. Tenesha Brown

 20

 21   Transcription Service:          Robin Warbritton
                                      Post Office Box 262
 22                                   Vilonia, AR  72173

 23

 24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

 25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```

2

1   APPEARANCES:

2   For the Government:        Ms. Kristin Huntington Bryant
                               U.S. Attorney's Office
3                              Eastern District of Arkansas
                               Post Office Box 1229
4                              Little Rock, AR  72203-1229

5   For the Defendant:         Ms. Kim Driggers
                               Federal Public Defenders Office
6                              The Victory Building
                               1401 West Capitol Avenue
7                              Suite 490
                               Little Rock, AR  72201

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

P R O C E E D I N G S

1

2     (Call to order of the Court.)

3          THE COURT:  Good afternoon, Ms. Driggers and Ms.

4  Bryant.

5          MS. DRIGGERS:  Good afternoon.

6          MS. BRYANT:  Good afternoon, Your Honor.

7          THE COURT:  We are here this afternoon for plea and

8  arraignment in the case of *United States of America v. Robert*

9  *Lightfoot*, case number 4:17-CR-144.

10          Mr. Lightfoot, would you and your attorney, Ms.

11  Driggers, please come forward to the lectern?

12          Mr. Lightfoot, the Grand Jury for the Eastern

13  District of Arkansas has charged you in a one count indictment

14  with impersonation of a federal agent in violation of 18

15  U.S.C. § 912.  The maximum statutory penalty for conviction of

16  this offense is not more than three years in prison, a fine of

17  not more than 250,000 dollars, or both, followed by not more

18  than three years of supervised release.  I want to remind you

19  that that is the maximum statutory penalty, does not reflect

20  the actual sentence you would receive if you plead guilty or

21  you're found guilty.  That would be decided by your sentencing

22  judge using the Federal Sentencing Guidelines for guidance.

23  And you can talk with Ms. Driggers about how the guidelines

24  would affect any actual sentence imposed.

25          For purposes of this hearing you have the right to

4

remain silent.  If you give up that right, anything that you
say can be used against you in this proceeding or in any
future proceedings.

You also have the right to counsel and to ask that
the Court appoint counsel for you.  I've been advised by my
Courtroom Deputy that you've indicated you plan to retain
Carter Dooley to act as your attorney in this matter; is that
right?

MS. DRIGGERS:  Your Honor, if I could?  It's my
understanding when I interviewed Mr. Lightfoot that he doesn't
have, you know, enough funds to pay for an attorney.  We
called Mr. Carter Dooley, who was informed that he would be
returned 30,000 dollars in cash from the agents that seized --
that seized that from him, and that if that fund -- those
funds were available, that he would take on the case.  But I
think -- I was informed, and the agents confirmed, that this
30,000 is supposedly his life savings, and we wanted to just
leave that to the Court's discretion, whether the Court was
going to make him use that money to pay for retained counsel
or if he would qualify for court appointed counsel in spite of
having that 30,000 dollars.

THE COURT:  Ms. Driggers, 30 -- I mean, it's -- it's
-- the law is pretty clear on this, if -- if you have enough
money to hire an attorney, you're obligated to hire an
attorney whether that's something that you consider to be your

1  life savings or not.  If -- if Mr. Lightfoot has got 30,000

2  dollars in cash, that's enough money for him to hire an

3  attorney, and I think that it would be -- having that amount

4  of cash, I couldn't say that he was in financial circumstances

5  that would justify me allowing you to represent him if he's

6  got the money.  Have the agents indicated that they're

7  satisfied that that money is money that is -- that Mr.

8  Lightfoot is entitled to have returned to him?

9          MS. DRIGGERS:  Yes, Your Honor, and, in fact, they're

10 going to meet us in the Marshals lockup right after court --

11         THE COURT:  Okay.

12         MS. DRIGGERS:  -- assuming he's released, to return

13 it.

14         THE COURT:  Well, Mr. Lightfoot, and do you -- in

15 selecting Mr. Carter [sic], is this a lawyer that Mr. -- Mr.

16 Dooley, I mean, is that a -- I'm not familiar with Mr. Dooley,

17 but is that a lawyer that Mr. -- that Mr. Lightfoot has some

18 knowledge of?

19         MS. DRIGGERS:  Yes, Your Honor.

20         THE COURT:  You've had interactions with him in the

21 past?

22         MS. DRIGGERS:  He's worked for him.

23         THE DEFENDANT:  I -- I work for him part-time, sir.

24         THE COURT:  Okay.  And where -- what city is he

25 located in?

1          THE DEFENDANT:  Wynne.

2          THE COURT:  Okay.  If -- if that's your -- it's -- as

3  -- you know, you're entitled to the attorney of your choice to

4  hire to represent you in this case.  If that's your choice,

5  then that's your choice.  You'll need to make arrangements

6  with Mr. Dooley to promptly make an entry of appearance in

7  this case as your lawyer.  Do you understand that?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  And -- and Ms. Driggers is strictly

10 standing in today for you as court appointed counsel for the

11 limited purpose of this plea and arraignment.

12         Have you had a chance, Ms. Driggers, to go over the

13 charge in the indictment with your client?

14         MS. DRIGGERS:  Yes, Your Honor.  At this time, he's

15 prepared to waive formal reading, enter a plea of not guilty,

16 and request a jury trial.

17         THE COURT:  All right.  That will be duly noted.

18 This case has been assigned for trial to Judge Baker.  Judge

19 Baker set the case for trial on July the 24th of this year, in

20 courtroom 4D.  And I've asked my Courtroom Deputy to provide

21 you, Ms. Driggers, with the only notice you'll receive

22 regarding the date this matter has been set for trial.

23         Ms. Driggers, pass that notice on to Mr. Dooley, if

24 he's the attorney that's ultimately hired.

25         MS. DRIGGERS:  Yes, Your Honor.

1    THE COURT:  And let him know the importance of

2  complying with all the scheduling deadlines that are going to

3  be contained in Judge Baker's discovery order that will be

4  sent to him in the near future.

5    It looks like the Government believes it's going to

6  take them two days to put their case on, exclusive of any time

7  that may be needed for a defense in this case.

8    Ms. Bryant, what's the Government's position on the

9  question of bond?

10    MS. BRYANT:  Your Honor, we have no objection to OR

11  bond.  We would ask that Mr. Lightfoot be placed on home

12  detention with electronic monitoring.  And if the Court would

13  like me to go into the reasons why I believe electronic

14  monitoring is justified, I'm happy to do that.

15    THE COURT:  Before we get to that issue, Ms.

16  Driggers, have you had some opportunity to speak with Mr.

17  Lightfoot and interact with him?

18    MS. DRIGGERS:  I've had about 15 minutes, Your Honor.

19    THE COURT:  Okay.  Mr. Lightfoot, any time I see

20  facts like these facts, and charges like impersonation of a

21  federal law enforcement officer, it -- it raises concerns in

22  my mind about whether or not you would -- you might benefit

23  from a mental health evaluation.  Have you ever had any kind

24  of mental health services?

25    THE DEFENDANT:  Oh, years ago.

1          THE COURT:  Okay.

2          THE DEFENDANT:  When I was in my 20s.

3          THE COURT:  As you stand here -- well, I don't want

4   to get into those kind of questions.  Do you think you would

5   benefit from any -- a complete mental -- mental evaluation to

6   help to determine whether or not your perception of yourself

7   as an FBI agent or some other kind of federal law enforcement

8   agent is -- is a belief that is founded in fact or founded not

9   in reality?

10          MS. DRIGGERS:  Your Honor, I think at this time he

11   would just like to remain silent.  He disputes that that ever

12   happened, at least right now.  So I don't --

13          THE COURT:  I'm sorry?

14          MS. DRIGGERS:  -- I don't know that he's in a

15   position to admit that he impersonated anyone.

16          THE COURT:  No.  No.  I'm not -- that's not the --

17   that's not the question that I'm asking.  The question relates

18   to whether or not he feels like that -- that he would benefit

19   from having a mental health evaluation that would be of

20   benefit to him in making a determination, one way or the

21   other, with regard to whether -- whatever his -- his beliefs

22   may be with regard to these facts, whether those beliefs are

23   beliefs that are founded in fact or not founded in fact or are

24   founded in -- in non-reality.

25          (Ms. Driggers consults with the Defendant, off the

9

1    record.)

2            THE COURT:  Let's do this --

3            THE DEFENDANT:  Yes, sir.

4            THE COURT:  -- we don't have to -- let's not get to

5    that point yet.  And let me just say this, I'm not familiar

6    with Mr. Dooley, I don't know how much experience Mr. Dooley

7    may have in -- in federal criminal cases and federal court.

8    If he's your friend, you need to candidly talk with him before

9    you hire him about whether or not Mr. Dooley feels like this

10   is an area of law that he's comfortable in.

11           THE DEFENDANT:  Yes, sir.

12           THE COURT:  I can -- I -- I can just tell you, and

13   you need to -- talk with him, Ms. Driggers, when you can,

14   under the perfection of the Fifth Amendment about what I'm

15   talking about here.

16           MS. DRIGGERS:  Yes, Your Honor.

17           THE COURT:  Because I have some reason to believe

18   that he might benefit --

19           MS. DRIGGERS:  I see.

20           THE COURT:  -- from a complete mental health

21   evaluation in Springfield.  And -- and if -- if he -- if

22   that's what he needs, it's going to be of benefit to him to

23   get that sooner rather than later.

24           MS. DRIGGERS:  Yes, of course, Your Honor.

25           THE COURT:  So, I'm going to ask you to talk with Ms.

1  Driggers, who can talk with you within the Fifth Amendment

2  privilege about the issue of a mental health evaluation.  And

3  that's something that you need to talk with her about now, you

4  may later need to talk about once you have retained the

5  attorney that's going to represent you in this matter.

6          I'm going to allow you to be released on an OR bond,

7  which is going to allow you to go back to your home and be

8  placed on electronic monitoring and home detention.

9          I'm going to go over these conditions with you, Mr.

10 Lightfoot.  I cannot emphasize enough to you the importance of

11 complying with all these conditions, because if you violate

12 any of these conditions I'm going to have to lock you up.

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And you're going to have a Pretrial

15 Services Officer who is going to be assigned to your case from

16 Jonesboro.  And they'll be watching and making sure you comply

17 with these conditions.  And if there are any problems with

18 your not complying with these conditions, they're going to

19 report that to Ms. Bryant, and Ms. Bryant is going to move to

20 have your release revoked.

21          These are going to be the conditions that you're

22 going to have to comply with while you're on this OR bond.  I

23 want to make sure you understand them which is why I'm going

24 to go over them with you orally.  You'll be given a copy of

25 your bond papers.  All these conditions will be noted on those

1  bond papers.

2        First, while you're on this OR bond, you must not

3  commit any offense in violation of federal, state, or local

4  law.  You must immediately advise your Pretrial Services

5  Officer if while you're on this OR bond you have any contact

6  with law enforcement.  If that's as minor as a traffic

7  citation, you have to report any contact that you've had with

8  state, federal, or local law enforcement to your Pretrial

9  Services Officer.

10        You must immediately advise the Court, your attorney,

11  and the United States Attorney, in writing, if there is going

12  to be any change in your address or phone number.  I'm going

13  to require you to go on electronic monitoring at your home in

14  Cherry Valley.  It's very important that you stay at that

15  address and that that address not change.  You don't have any

16  plans to change that address, do you?

17        THE DEFENDANT:  No, I own my home.

18        THE COURT:  Okay.  Well, that -- because we need to

19  know where you'll be living at all times and how to get a hold

20  of you by telephone.

21        You must appear at all proceedings in this case and

22  voluntarily surrender for imposition of any sentence imposed.

23        I want you, while you're on electronic monitoring,

24  initially to not work.  You've indicated to the Pretrial

25  Services Officer that you -- some investigative -- that you do

1  some investigative type work.  Until some employment can be

2  confirmed, that's based in fact and reality, I don't want you

3  working.  I want you to -- I want you to -- to be on

4  electronic monitoring in your home.

5       If you can substantiate to the satisfaction of your

6  Pretrial Services Officer that you, in fact, have legitimate

7  employment and legitimate work to be done, then -- and that's

8  work that you can do, you're 69 years old, then I'll consider

9  allowing you to do it.  But until all that can get confirmed,

10 you're going to be on electronic monitoring and you're not

11 going to be working.  Do you understand that?

12      THE DEFENDANT:  Yes, sir.

13      THE COURT:  You must report to the Pretrial Services

14 Officer at all times that he or she directs for you to report.

15      You must refrain from possessing any firearms,

16 destructive devices, dangerous weapons, or ammunition for

17 firearms.  It's my understanding that there are three firearms

18 that are in your home?

19      THE DEFENDANT:  Yes, sir.

20      THE COURT:  I want those three firearms to be

21 surrendered this afternoon to the Pretrial Services Officers

22 and other law enforcement officers that are going to be

23 involved in placing you on electronic monitoring at your home.

24 During the time that you're on this bond, you may not possess

25 a firearm or ammunition for a firearm.  All guns must be

1  surrendered.  That also includes the concealed carry permit

2  that you have.  That needs to be surrendered today to your

3  Pretrial Services Officer.  Do you understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  You must refrain from any use of alcohol.

6  You must refrain from any use or unlawful possession of

7  narcotic drugs or other controlled substances unless they're

8  prescribed by a licensed physician.

9          You must maintain regular contact with your attorney.

10  And that means once you've hired your -- your attorney, you

11  must be in contact with your attorney once every two weeks.

12          You must report to the Pretrial Services Office at

13  least 30 minutes before all scheduled proceedings in this

14  case.

15          It's my understanding that you have an expired

16  passport?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  And that's somewhere in your home?

19          THE DEFENDANT:  It's in my safe.

20          THE COURT:  Okay.  When you get home this afternoon,

21  I want you to surrender that expired passport to your Pretrial

22  Services Officer.  And I -- one of your conditions is you

23  cannot obtain a passport or other international travel

24  documents.

25          I also want you to get a mental health evaluation.

1   And I'm going to require that you have mental health

2   counseling if that's deemed necessary by your Pretrial

3   Services Officer.  You're going to benefit from having a

4   mental health evaluation, whether that's in Springfield or

5   whether that's somewhere in Jonesboro.  But I'm going to

6   require that you get that so that we will have any insights

7   that that may share that may be relevant to your case.

8           As I've indicated, you're going to go on home

9   detention, which means you'll be hooked up to electronic

10  monitoring this afternoon.  That electronic monitoring will

11  allow you, with the discretion of your Pretrial Services

12  Officer, to have an hour or so a day when you can leave your

13  home to pick up groceries or to take care of any business that

14  you need, but it will be a narrow window.  You'll be permitted

15  to leave the home during that period of time, but you have to

16  be back before that window closes.  If you're not back, that's

17  an out of range violation, and if you have an out of range

18  violation, that's going to lead the Pretrial Services Officer

19  to recommend that you be detained.  Do you understand that?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  All right.  I'm going to now have you

22  sign your bond papers.  By signing these papers, you're

23  promising to comply with each and every one of the noted

24  conditions.

25          MS. BRYANT:  And, Your Honor, I didn't know if we

1  needed to address -- I know a lot of times probation wants to

2  know who foots the bill for the location monitoring.

3         THE COURT:  And, Ms. Bryant, I -- I'm wiping out

4  probably his life savings on attorney's fees.  He's got 550

5  dollars in Social Security.

6         MS. BRYANT:  I have no objection to the Government

7  paying that.

8         THE COURT:  You know, I think -- I think the

9  Government can pick up that cost.

10        MS. BRYANT:  Yes, Your Honor.

11        THE COURT:  All right.  Mr. Lightfoot, the last thing

12 that I'm required to do is make certain that you understand

13 some very serious penalties and sanctions that are going to

14 come into play if while you're on this OR bond you engage in

15 certain kinds of prohibited conduct.

16        First, if you violate any of those conditions, as

17 I've explained, Ms. Bryant is going to file a motion to have

18 your release revoked.  We're going to have to have a hearing

19 and if I find that you violated, based on the facts,

20 conditions of your OR bond, it's likely at that time that I'm

21 going to have to have you locked up until all charges are

22 resolved.  Sometimes charges like this can take a year or more

23 to get resolved.  That's a very long time for a 69 year old

24 man to spend in jail because you can't do something as simple

25 as comply with these conditions.  But understand, that's how

1  important it is.  Your liberty is at stake.  If you violate

2  these conditions and the Government files a motion to revoke,

3  it's likely at that point that I'm going to have to lock you

4  up.

5          In addition to losing your liberty, your sentencing

6  judge -- if you later plead guilty or you're found guilty,

7  your sentencing judge can consider the fact you violated

8  conditions and that can be used as a factor to increase the

9  length of the sentence you receive on a charge.

10          In addition, if jail time is involved, the BOP will

11  consider the fact you violated conditions of your bond and

12  they'll hold that against you in deciding what level security

13  facility you should be incarcerated in and what kind of

14  privileges should be made available to you once you are

15  incarcerated.

16          So there's just a whole host of really bad, bad

17  consequences for violating these conditions.  The way to avoid

18  all that is to make sure you comply.

19          Second, and listen carefully to this, if you engage

20  in new federal criminal conduct while you're on this OR bond,

21  there is a specific federal statute that says the penalty for

22  that is ten years, and that sentence must be imposed

23  consecutive to any sentence that you receive on these

24  underlying charges, and your sentencing judge can very

25  dramatically enhance the penalty on the underlying charges

1  based on the fact that you engaged in new federal criminal

2  conduct while on bond.  So make very sure while you're on this

3  OR bond you don't do anything that would give rise to new

4  federal criminal charges.

5       Third, if while you're on this OR bond you knowingly

6  fail to appear, you don't show up in court when you're

7  supposed to, you can be charged with that as a separate felony

8  offense.

9       And finally, federal law makes it a felony punishable

10  by five to ten years of imprisonment, a fine of up to 250,000

11  dollars, or both, if while you're on this OR bond you attempt

12  to intimidate, tamper with, or retaliate against a witness,

13  juror, informant, or officer of the court.

14       Do you understand those penalties and sanctions?

15       THE DEFENDANT:  Yes, sir.

16       THE COURT:  And those are all summarized on the last

17  page of your bond papers.

18       Is there anything further for the Government in this

19  matter?

20       MS. BRYANT:  No, Your Honor.

21       THE COURT:  And have you -- has he been processed yet

22  by the Marshals Service?

23       THE DEFENDANT:  Yes.

24       MS. DRIGGERS:  He'll have to go back up, Your Honor.

25       THE COURT:  If -- Ms. Driggers, help him to be sure

1   he gets his money that he has coming back to him.  And as far

2   as transportation back to Cherry Valley, where are you on

3   that?

4           MS. DRIGGERS:  He's going to have to get a cab, Your

5   Honor.

6           THE DEFENDANT:  I don't have -- I don't have a way

7   back yet.

8           MS. DRIGGERS:  We don't have -- we haven't been able

9   to --

10          THE COURT:  Surely to goodness you've got somebody

11  you can call without resorting to a cab ride to Cherry Valley.

12  That would cost you a fortune.

13          MS. DRIGGERS:  The numbers are all in his cell phone,

14  Your Honor, and that was confiscated.

15          THE COURT:  But he's going to get his cell phone

16  back, isn't he?

17          MS. DRIGGERS:  I don't --

18          THE DEFENDANT:  They didn't -- they didn't let me

19  bring it.

20          THE COURT:  Where is his cell phone now?

21          THE DEFENDANT:  At home.

22          THE COURT:  Your cell phone is at home?

23          THE DEFENDANT:  Yes, I was --

24          THE COURT:  Have you got a friend whose phone number

25  you know that's not on your cell phone?

1          MS. DRIGGERS:  We've had two people, one of whom was

2   Mr. Dooley, who -- but he was on vacation.  And then the other

3   one is his ex-wife, but she's not answering her phone.  So,

4   the cab was the only other option, Your Honor.

5       (Ms. Driggers confers with the Defendant, off the record.)

6          THE COURT:  Are we having anybody -- are we going to

7   have anybody from this office go to Mr. Dooley's [sic] home?

8          THE PRETRIAL SERVICES OFFICER:  Yes, Your Honor,

9   we've got the -- a couple of officers from this office --

10          THE COURT:  That are going to be driving up there?

11          THE PRETRIAL SERVICES OFFICER:  Uh-huh.

12          THE COURT:  Do you think it would be possible for

13   them to give him a ride back home?

14          THE PRETRIAL SERVICES OFFICER:  I can check.  I don't

15   know -- and I was [indiscernible] maybe get into like a GSA

16   contract, but I'd be happy to ask.

17          MS. DRIGGERS:  I know we had to stop doing that, Your

18   Honor, because we were using government cars, and the

19   liability, we weren't able to.

20          THE COURT:  Yeah.  Well, Mr. Lightfoot, I'm sorry.

21   Maybe -- it's unfortunate, but without knowing any other phone

22   numbers not in your stored -- that are not stored in your

23   phone, you're going to -- I just hate for you to -- don't they

24   have buses that go back that way?

25          THE DEFENDANT:  No.

1          MS. DRIGGERS:  Not -- not to that remote area, Your

2     Honor.

3          THE DEFENDANT:  No.

4          MS. DRIGGERS:  I think the closest one would be

5     Jonesboro.

6          THE COURT:  But if he took a bus to Jonesboro, that

7     would be far less -- it would cost him a lot less money to

8     take a bus to Jonesboro, and then a bus -- and then a cab from

9     Jonesboro to home, than it would be a cab from here to -- to

10    Cherry Valley.

11         MS. DRIGGERS:  Right.  We'll try.  We'll try, Your

12    Honor.

13         THE COURT:  All right.  And you couldn't be in better

14    hands than Ms. Driggers.  She's -- she'll think outside the

15    box and try to figure something out.  But do the best you can

16    to get back to your house this afternoon.

17         One thing that is going to affect us on this, if he

18    can't get a ride expeditiously back, we're not going to be

19    able to get him hooked up.  And -- and that's going to create

20    problems for us.

21         THE PRETRIAL SERVICES OFFICER:  We can do an office

22    install.  That is an option.  But we will have to conduct a

23    range test.  And I believe we -- we can work with you to kind

24    of get a time line as far as that we can maybe do that

25    tomorrow after he gets home.  But we can put his monitor on

21

1    while he's here today.

2            THE COURT:  Okay.  Well, work with him.  I want you

3    to meet with -- with Mr. Lightfoot before he leaves the

4    building and make whatever arrangements we can around his

5    difficulties in trying to get back to Cherry Valley to get him

6    hooked up on electronic monitoring.

7            Anything further for the Government in this matter?

8            MS. BRYANT:  No, Your Honor.

9            THE COURT:  For the defense?

10           MS. DRIGGERS:  No, Your Honor.  Thank you.

11           THE COURT:  All right.  Court is adjourned.

12       (Adjournment at 3:01 p.m.)

13               ELECTRONIC SOUND RECORDING CERTIFICATION:

14   I, court approved transcriber, certify that the foregoing is a

15   correct transcript from the official electronic sound

16   recording of the proceedings in the above-entitled matter.

17

18   /s/Robin Warbritton_____          October 6, 2017_____
     Signature of Approved Transcriber    Date

19

20   Robin Warbritton_____
     Typed or Printed Name

21

22

23

24

25